UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

LORI S. MASLOW, *et al.*,

        Plaintiffs,

        v.

BOARD OF ELECTIONS IN THE
CITY OF NEW YORK,

        Defendant.
---------------------------------------------------------X

**MEMORANDUM & ORDER**
06-CV-3683 (NGG) (SMG)

NICHOLAS G. GARAUFIS, United States District Judge:

      Plaintiffs bring this action to challenge the rule of Defendant Board of Elections in the City of New York ("Defendant" or "Board of Election") that a candidate collecting signatures on a designating petition must utilize only subscribing witnesses who are registered members of that candidate's party, codified at New York Election Law § 6-132(2) ("Party-Witness Rule"). Plaintiffs and Defendant have filed cross motions for summary judgment. For the reasons that follow, Plaintiffs' motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

**I.    Standard of Review**

      When deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court will accept as fact only those facts included in the parties' Local Civil Rule 56.1 statements of material fact and supported by citations to the record. Local Civil Rule 56.1. Any numbered paragraph in the parties' statement of material facts will be deemed to be admitted for purposes of their motions

1

unless specifically controverted by a correspondingly numbered paragraph in the opposing side's statement. Id.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), *i.e.*, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). "A fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party has the burden of establishing the absence of a genuine issue of material fact. Liberty Lobby, 477 U.S. at 256. If the moving party meets its burden, the non-moving party must then "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## II.  Background[1]

Plaintiffs initially filed this suit seeking injunctive relief directing Defendant Board of Elections to place the names of Plaintiffs Phillip J. Smallman ("Smallman") and John G. Serpico

---

[1] In support of their motion for summary judgment, Plaintiffs have submitted a 160-paragraph statement pursuant to Local Civil Rule 56.1. (Plaintiffs' Local Rule 56.1 Statement ("Pl. 56.1").) In reply, Defendants contest all but twenty-three of Plaintiffs' numbered paragraphs and put forth fourteen numbered paragraphs that they assert are uncontested facts. (Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def 56.1").) The court finds almost the entirety of Plaintiffs' and Defendant's 56.1 statements to be unhelpful in determining the uncontested facts. Plaintiffs' 56.1 statement is largely a numbered rendition of statements supported only by inadmissible evidence, assertions of law, and gratuitous or unsupported allegations (*e.g.*, "It is difficult nowadays finding volunteers to circulate designating petitions." (Pl. 56.1 ¶ 31); "People sometimes forget their political party enrollment." (Id. ¶ 41)). Similarly, Defendant's 56.1 statement simply provides the court with various statistics from the Board of Elections and from the census (*e.g.*, "The citizen population of persons aged 18 and over in New York State in the year 2000 was approximately 12,478,901" (Def 56.1 ¶ 4)). Neither 56.1 statement reviews the uncontested facts in an illuminating fashion.

("Serpico") (collectively, "Candidate Plaintiffs") and former Plaintiff Zachary Lareche ("Lareche") on the ballot for Judge of the Civil Court of the City of New York in Kings County in the September 12, 2006 Democratic Party primary election. (Complaint ("Compl.") (Docket Entry # 1).) The other four remaining plaintiffs in the case, Lori S. Maslow ("Maslow"), Carol Faison ("Faison"), Jemel Johnson ("Johnson"), and Kenneth Bartholomew ("Bartholomew") (collectively, "Subscribing Witness Plaintiffs"), each sought to serve as subscribing witnesses for the Candidate Plaintiffs in that election, even though they were not enrolled in the Democratic Party at the time. (Id.)

At the same time Plaintiffs filed their Complaint, they also filed a motion for a preliminary injunction (Docket Entry #3), on which no action was taken initially because Defendant had not yet ruled on the objections filed against Smallman's, Serpico's, and Lareche's petitions (Docket Entry # 6). The motion for a preliminary injunction was later rendered moot and never ruled upon by Judge Edward R. Korman because the Board of Elections never removed Smallman and Serpico from the ballot due to a lack of valid signatures: even without the contested signatures, both Smallman and Serpico had a sufficient number of signatures to appear on the ballot, which, in fact, they did. With regard to then-Plaintiff Lareche's petition, even if the signatures procured by the subscribing witnesses who were not enrolled in the Democratic Party had been counted in favor of Lereche's petition, he still would have lacked a sufficient number of signatures to earn a position on the ballot. (Docket Entry # 9.)

Specifically, to attain a position on the Democratic primary election ballot in 2006, Smallman and Serpico needed to file a designating petition containing a minimum of 4,000 valid signatures of enrolled Democrats. (Pl. 56.1 ¶ 80 (citing Declaration of Aaron Maslow ("Maslow Decl.") ¶ 23); Def. 56.1 ¶ 80.) Defendant prepared a report ("Clerk's Report") detailing

objections to Serpico and Smallman's petitions. (Pl. 56.1 ¶¶ 93, 96; Def 56.1 ¶¶ 93, 96.) For Serpico's petition, Defendant's Clerk's Report states that 109 signatures were invalid because the subscribing witnesses were not registered to vote and 211 were invalid because the subscribing witnesses were not enrolled in the correct party; overall, the Clerk's Report states that of the 11,971 signatures filed on Serpico's petition, 7,117 were invalid and 4,854 were valid, still more than the 4,000 required to attain a position on the ballot. (Pl. 56.1 ¶¶ 94-95; Def. 56.1 ¶¶ 94-95.) For Smallman's petition, Defendant's Clerk's Report states that 119 signatures were invalid because the subscribing witnesses were not registered to vote and 211 were invalid because the subscribing witnesses were not enrolled in the correct party; overall, the Clerk's Report stated that of the 13,397 signatures filed on Smallman's petition, 7,712 were invalid and 5,685 were valid, also more than the 4,000 required to attain a position on the ballot. (Pl. 56.1 ¶¶ 97-98; Def. 56.1 ¶¶ 97-98.)

The parties do not contest that, despite the invalidation of signatures witnessed by non-party enrollees, the Candidate Plaintiffs had a sufficient number of signatures remaining on their 2006 designating petitions to attain positions on the ballot. (Pl. Mem. at 1.) The parties also do not contest that the Candidate Plaintiffs lost the primary election. (Id.) The remaining Plaintiffs have filed an Amended Complaint seeking to conform this action to one for a declaratory judgment.[2] (Id.) Plaintiffs' Amended Complaint for declaratory judgment also states that the Subscribing Witness Plaintiffs wish to support candidates of another party at some point in the

---

[2] After filing their motion for a preliminary injunction, which was rendered moot, Plaintiffs withdrew all claims against all defendants other than Defendant Board of Elections (Docket Entries # 11, 14, 27), and Plaintiff Lareche and Plaintiff Livie Anglade withdrew from the case entirely (Docket Entry # 14).

future by collecting petition signatures for the Candidate Plaintiffs or other named and unnamed candidates.

### A. Standing to Contest an "Injury-in-Fact"

In order to have standing under Article III, a plaintiff must demonstrate that (1) he or she has suffered an "injury in fact" that is "concrete and particularized" as well as "actual or imminent," rather than "conjectural or hypothetical"; (2) the injury is "fairly traceable" to the challenged conduct; and (3) it is likely, rather than "merely speculative," that the injury will be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, (1992) (internal quotation marks omitted).  A plaintiff must at least allege that he suffered an injury at the hands of a defendant for his claim against that defendant to survive summary judgment.  Wachtler v. County of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994); see also Lujan, 504 U.S. at 560.  At the summary judgment stage, Plaintiffs must set forth specific facts to support the invocation of federal jurisdiction and to prove standing.  Id., 504 U.S. at 561.  For the reasons that follow, the court finds that Plaintiffs have Article III standing to bring the instant lawsuit.

#### i. Smallman and Serpico and their Subscribing Witnesses

Defendant argues that Plaintiffs Smallman and Serpico and all Subscribing Witness Plaintiffs suffered no injury-in-fact because Smallman and Serpico qualified for the ballot regardless of the treatment of the disputed signatures and because former Candidate Plaintiff Lareche did not qualify for the ballot even had the contested signatures been counted.  Plaintiffs contend that the Candidate Plaintiffs did suffer an injury-in-fact by being "circumscribed as to who could carry their First Amendment message during the petitioning period."  (Pl. Mem. at 4; Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Pl. Reply Mem.") at 4.)

The court finds the cases cited by Defendant in support of its position regarding standing to be somewhat unhelpful, but, based on its own independent research, the court finds the Second Circuit's reasoning and holding in <u>Lerman v. Board of Elections in City of New York</u>, 232 F.3d 135 (2d Cir. 2000), to be highly instructive on this issue. In <u>Lerman</u>, the Court of Appeals dealt with a similar election-law suit in which a subscribing witness plaintiff alleged that New York's witness residence requirement violated the First and Fourteenth Amendments on its face by permitting only district residents to be eligible to witness signatures on candidates' designating petition. <u>Id.</u> The Board of Elections contended that, as a resident of the another council district, the plaintiff lacked Article III standing because she was "unaffected by the outcome" of the election in the council district that the suit involved. Therefore, the Board argued, the plaintiff suffered no injury from the absence of her candidate from the primary ballot in that district. <u>Id.</u> The Circuit Court disagreed and held that the plaintiff did have standing:

> Lerman appears rather easily to have met the three requirements set forth by [Lujan]. Having associated with [a candidate] in order to promote his political candidacy and help him gain access to the primary election ballot, [the plaintiff] asserts injury in having been deprived of the opportunity to gather signatures in behalf of his candidacy. Moreover, the [Board of Elections] has acted directly to strike those designating petitions witnessed by [the plaintiff], and in the context of an action challenging the legality of government action, we must draw some significance from the fact that [the plaintiff] is a direct object of the action . . . at issue. Given the nature of the defendants' challenged conduct, there should be little question that the [defendants'] action . . . has caused [her] injury, and that a judgment preventing . . . the action will redress it.

<u>Id.</u> (citations and internal quotation marks omitted.)

While it is true that Defendant did not ultimately take any action on the objectionable signatures here, nevertheless the court cannot conclude that both the Candidate Plaintiffs and the Subscribing Witness Plaintiffs did not suffer any injury-in-fact. As the court held in <u>Lerman</u>, a

6

restriction that is alleged to cause injury-in-fact to a plaintiff's rights to engage in interactive political speech and expressive political association is sufficient to confer standing under Article III. See also Meyer v. Grant, 486 U.S. 414 (1988) (holding that a Colorado statute regulating the ballot initiative process that made it a felony to pay petition circulators was unconstitutional because it abridged the appellees' right to engage in political speech and therefore violated the First and Fourteenth Amendments to the Federal Constitution). It thus follows logically that the Subscribing Witnesses for Smallman and Serpico's petitions have Article III standing to pursue these claims. It is also important to note, at this stage in the discussion, that just because Plaintiffs here have alleged an injury-in-fact that is "fairly traceable to the challenged conduct and redressable by a favorable judicial decision," that does not mean that Plaintiffs have a valid claim on the merits. See Lerman, 232 F.3d 142 n.9 ("The two questions . . . are distinct") (citing Coalition for Sensible & Humane Solutions v. Wamser, 771 F.2d 395, 399-400 (8th Cir. 1985) (holding that unregistered voter and individuals denied status as registrars have standing to challenge registrar appointment process, but denying their claim on the merits)).

The court acknowledges that the candidate in Lerman was not a plaintiff to that case; however, here, not only do the Subscribing Witness Plaintiffs specifically allege that the state restricted their ability to engage in interactive political speech and expressive political association, but the Candidate Plaintiffs do as well. For the Candidate Plaintiffs, the issue is whether they may utilize the services of non-party members as subscribing witnesses to their petitions. Just as the Circuit Court held in Lerman that a favorable judgment would redress the injury to the plaintiff's rights to engage in political association, here too, a favorable judgment would redress an injury to the Candidate Plaintiffs as well as the Subscribing Witness Plaintiffs. The injury-in-fact that gave the plaintiff in Lerman standing – the process of engaging in

political activity in support of a candidate's candidacy – is equally applicable to the candidate himself or herself, who is injured by not being able to pick his or her subscribing witness.

### ii. Lareche's Subscribing Witnesses

Similarly, even though Lareche is no longer a plaintiff in this action, his Subscribing Witness Plaintiffs are, and thus the standing issue remains relevant to them. The court finds that Lareche's subscribing witnesses similarly survive the test for standing laid out above.

Defendant argues that Lareche's inability to have his name placed on the ballot was not causally due to the Party-Witness Rule and thus the injury to Lareche and to his Subscribing Witness Plaintiffs was not proximately caused by the conduct complained of. It is true that Lareche lacked enough signatures to obtain a place on the ballot even had those disputed signatures been counted in his favor. However, given the above analysis, Defendant is wrong to argue that none of Lareche's Subscribing Witness Plaintiffs has standing to assert claims in connection with Lareche's failed candidacy. They, just like the Subscribing Witness Plaintiffs for Smallman and Serpico, allege violations of their rights to engage in interactive political speech and expressive political association. That is sufficient to confer standing under Article III.

### B. Mootness/Future Anticipated Injury-in-Fact

During the course of the litigation of this case, the election at issue occurred and, as noted above, arguably mooted some of Plaintiffs' claims. However, the rule of law is clear that a claim is not moot where it is "capable of repetition, yet evading review." Meyer v. Grant, 486 U.S. 414, 417 (1988). To establish that a claim is capable of repetition yet evading review, Plaintiffs must prove that (1) there will not be sufficient time to litigate the challenged action fully prior to its becoming moot due to the passage of time, and (2) it is reasonable to expect that

they will be subject to the same action again. Id. Plaintiffs have amended their initial claims to argue that they will suffer an injury in the future because the Subscribing Witness Plaintiffs intend to support other potential candidates, including the Candidate Plaintiffs and other named and unnamed candidates in future elections. The Second Circuit has stressed that, in a situation such as this one, Plaintiffs have standing to pursue these claims based on their argument that their claims are capable of repetition yet evading review. Id.

Just because the Candidate Plaintiffs attained a position on the ballot, as the above discussion regarding standing indicates, does not mean that the Candidate Plaintiffs will not suffer an injury-in-fact in future specified and unspecified elections. The question is whether any alleged future injury is capable of repetition yet evading review. Again, the court reiterates that a finding of standing at this point does not mean that Plaintiffs have a viable claim on the merits.

The crux of Defendant's standing argument is that Plaintiffs are merely speculating that the Candidate Plaintiffs intend to stand for elective office in the future, if and when such an office becomes available. It is even more speculative, Defendant argues, whether, at the time of these unspecified future elections, the unspecified candidates will seek to include the Subscribing Witness Plaintiffs as subscribing witnesses. In reply, Plaintiffs argue that their claims are not speculative and give a few examples of the future elections and candidates to which they refer.

In support of their position, for example, Plaintiff Lori Maslow, a registered Democrat, asserts that she intends to petition for her husband, Aaron D. Maslow – who just so happens to be Plaintiffs' counsel – to be a candidate for member of the Kings County Republican County Committee from the 91st Election District of the 59th Assembly District in Kings County.

9

(Reply Declaration of Aaron D. Maslow in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment ("Aaron D. Maslow Decl.") ¶ 4 (citing Lori Maslow Declaration ¶ 12).) In addition to Lori Maslow's affidavit, the other Subscribing Witness Plaintiffs also claim that they intend to support other candidates in the future, including Candidate Plaintiff Smallman, whenever they run in the future. (See Lori Maslow Decl. ¶ 12; Faison Decl. ¶ 12; Batholomew Decl. ¶ 11; Johnson Aff. Response to Interrogatories ¶ 11.) Defendant argues, in reply, that the petitioning for the Kings County Republican County Committee from the 91st Election District of the 59th Assembly District in Kings County has not yet begun. That is true: as the reply declaration of Aaron D. Maslow itself states: "The petitioning for that position will take place over a five and a half week period from June to July of [2008]. . . . The petition will be filed with Defendant during the filing period in July." (Id.) However, with regard to standing, the issue is not whether the petitioning has begun, but whether, once it does, the same situation of which Plaintiffs complain will repeat itself, yet be capable of evading judicial review.[3]

Overall, Plaintiffs' claims of future injury are premised on the argument that, in the future, they may find themselves subject to the same limitations on non-enrolled signatories and will be unable to obtain proper judicial review at that time since an eventual election will moot their claims. In Lerman, the facts of which are described above, the Second Circuit confronted a

---

[3] There is a possible ethical issue inherent here, since there is no evidence before this court that Aaron Maslow would in fact seek to appoint Lori Maslow as a subscribing witness. This raises a troubling issue for the court since, even were there to be evidence on that point, Aaron D. Maslow, Plaintiff's counsel, is likely a necessary witness for Plaintiff Lori Maslow to establish standing, a situation that may run afoul of a number of ethical and legal rules. E.g., 22 N.Y.C.R.R. § 1200.21. However, since the court finds that standing exists as a matter of law even without this possible testimony because of past injury, the court need not reach any conclusion about whether Aaron D. Maslow's representation creates such a conflict.

very similar argument:

> The NYC Board argues that the plaintiffs' claims are moot, since the September 1999 primary election is over, having taken place without [the candidate's] name on the ballot. However, this contention is mistaken since the plaintiffs' claims fall within the exception to the mootness doctrine for issues capable of repetition, yet evading review. Both of the two preconditions for invoking this doctrine have been met – the challenged action was too short to be fully litigated prior to its expiration, and there is a reasonable expectation that the same complaining parties would be subject to that same action in the future. Since the issues presented in this case will persist in future elections, and within a time frame too short to allow resolution through litigation, the NYC Board's mootness argument necessarily fails.

232 F.3d at 141 (citations and internal quotation marks omitted). Similarly, in Members for a Better Union v. Bevona, 152 F.3d 58, 61-62 (2d Cir. 1998), the Second Circuit found that Plaintiffs, members of Local 32B-32J of the Service Employees International Union, AFL-CIO, had standing to bring a suit against the president of the union to promote the fairness of the membership's vote on constitutional amendments proposed by the plaintiff union members. Even though the vote was already finished at the time the court heard the case, Plaintiffs argued that they intended to seek a permanent injunction that would require all future votes on constitutional amendments to be conducted by a neutral party during extended voting hours. The Circuit Court agreed that they had standing since the union's challenge could not be fully litigated before the vote and because the plaintiffs' intention to seek permanent injunctive relief in that case confirmed that "these same parties are reasonably likely to find themselves again in dispute over the issues raised in this appeal." Id. at 61.

In this case, the challenged action was too short to be fully litigated prior to its expiration and there is a reasonable expectation that the same complaining parties would be subject to the same action in the future. See Meyer, 486 U.S. at 417-418 n.2; Lerman, 232 F.3d at 141. Any

11

mootness argument, or argument based on Plaintiff's future standing, must fail, since the issues presented in this case undoubtedly "will persist in future elections, and within a time frame too short to allow resolution through litigation." Lerman, 232 F.3d at 141 (quoting Fulani v. League of Women Voters Educ. Fund, 882 F.2d 621, 628 (2d Cir. 1989)).

### C. Constitutional Claims

As to the merits, Plaintiffs argue that (1) the Party-Witness Rule is not sufficiently narrowly tailored to advance the asserted interest of protecting the associational interests of political parties, and (2) the Party-Witness Rule is not sufficiently narrowly tailored to advance the asserted interest of protecting against ballot access fraud. As such, they argue that the law "violates their First Amendment rights to ballot access, to freedom of speech, and to associate for the advancement of political beliefs." (Pl. Mem. at 2.) Specifically, Plaintiffs argue that (1) the Party-Witness Rule "violates the First Amendment rights to free speech and to associate for the advancement of political beliefs of those citizens 18-years of age and older whom the statute precludes from procuring and witnessing signatures for them," and (2) "the First Amendment right of voters to vote for [Smallman and Serpico] is affected by the challenged statutory provision because if they cannot make the ballot or are hindered in making the ballot due to it, the ability of the voters to vote for them or to hear their campaign message is negatively impacted." (Id.) Furthermore, the Subscribing Witness Plaintiffs argue that (1) "the disqualification of signatures procured and witnessed by them on party designating petitions merely because they are not enrolled in the party whose primary is being contested violates their First Amendment rights to freedom of speech and to associate for the advancement of political beliefs," (2) the law compelled Plaintiff Faison to remain a Democrat when she "desires to be able to change her enrollment back to Republican but still be able to collect signatures for certain

12

Democrats" thus "violat[ing] her Constitutional rights," (3) "if the Board of Elections were to invalidate a designating petition of a candidate for the primary election of the party in which [Plaintiff Maslow] is enrolled due to the disqualification of signatures witnessed by other persons who were not registered voters or not enrolled members of that party, [Plaintiff Maslow] will have lost the Constitutional right to vote for said candidate, and (4) "since New York Election Law section 6-132 authorizes notaries public and commissioners of deeds to procure and attest to signatures on designating petitions without having to be registered voters and enrolled members of the party of the primary contest, but requires [Plaintiffs] to be registered voters and enrolled party members to witness signatures, their Equal Protection rights are violated." (Id. at 2-3.)

By Order dated December 19, 2007, this court ordered the parties' motions for summary judgment held in abeyance pending the U.S. Supreme Court's decision in New York State Bd. of Elections v. Lopez Torres, 128 S.Ct. 791 (2008). I find Lopez Torres to be controlling in favor of Defendant and for that reason grant summary judgment for Defendant.

In Lopez Torres, the Court considered a Section 1983 action against the New York State Board of Elections in which the respondents argued that New York's statutory scheme for political parties' nominating candidates for New York State Supreme Court judges violated their political association rights under the First Amendment. Since 1921, New York's election law has required parties to select their nominees by a convention composed of delegates elected by party members. 128 S.Ct. at 793. An individual running for delegate must submit a 500-signature petition collected within a specified time, and the convention's nominees appear automatically on the general-election ballot, along with any independent candidates who meet certain statutory requirements. Id. The respondents filed a suit seeking, inter alia, a declaration

that New York's convention system violates the First Amendment rights of challengers running against candidates favored by party leaders and an injunction mandating a direct primary election to select New York Supreme Court nominees.  Id.

The Court held that "a political party has a First Amendment right to limit its membership as it wishes and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform," even though a state's power to prescribe party use of primaries or conventions to select nominees for the general election is "not without limits."  128 S. Ct. at 793 (citing California Democratic Party v. Jones, 530 U.S. 567, 577 (2000)).  The Court wrote that the respondents, who claimed their own associational right to join and have influence in the party, were in no position to rely on the associational right that the First Amendment confers on political parties.  Id. at 797-799.  The Court further rejected the respondents' contention that New York's electoral system did not assure them a fair chance of prevailing in their parties' candidate-selection process.  Id. at 798.  Finding "no support in th[e] Court's precedents" for such a proposition, the Court found the New York law's signature and deadline requirements to be "entirely reasonable" since a state may demand a minimum degree of support for candidate access to a ballot.  Id. (citing Jenness v. Fortson, 403 U.S. 431, 442 (1971)).

The Lopez Torres Court further rejected the respondents' arguments that the state convention process following the delegate election did not give them a realistic chance to secure their party's nomination because the party leadership garners more votes for its delegate slate and effectively determines the nominees.  "This says no more than that the party leadership has more widespread support than a candidate not supported by the leadership. Cases invalidating ballot-access requirements have focused on the requirements themselves, and not on the manner

14

in which political actors function under those requirements." Id. at 798-800 (citing Bullock v. Carter, 405 U.S. 134 (1972)). "Those cases do not establish an individual's constitutional right to have a 'fair shot' at winning a party's nomination." Id. Finally, the court rejected as "a novel and implausible reading of the First Amendment" the respondents' argument that the existence of an entrenched "one-party rule" in the State's general election demands that the First Amendment be used to impose additional competition in the parties' nominee-selection process. Id. at 800-01.

The instant limits imposed by the New York statute at issue in this case fall well short of the limits set forth on the state by Lopez Torres and California Democratic Party. Simply put, the Court has granted New York State enormous latitude to exclude non-members from participating in the selection of and "determin[ing] the candidate bearing the party's standard in the general election." Lopez Torres, 128 S.Ct at 798. Associational rights belong to the individual only so far as they allow those individuals to join a political party, id. at 797-98, but associational rights belong to the political party such that the party – not the individual – may structure its own internal processes and "select the candidate of the party's choosing," id. at 798. As the Court wrote: "The weapon wielded by these plaintiffs is their *own* claimed associational rights not only to join, but to have a certain degree of influence in, the party . . . This contention finds no support in our precedents." Id. at 798.

Neither Defendant nor Plaintiffs contest the principal that a political party has limits on its ability to limit its membership and choose a candidate-selection process. However, Plaintiffs seek to draw a line as to what those limits are that Lopez Torres refused to draw. Plaintiffs take the fact that the Court wrote that "[t]hese rights are circumscribed," 128 S.Ct. at 797, to mean that "[h]ence, the associational membership and candidate-selection rights of a party cannot

15

override the First Amendment rights of lawful candidates to select adults of their choosing to act as their designating petition circulators." (Letter from Aaron D. Maslow to the court dated January 31, 2008 at 2.) But the Court implied no such thing. Indeed, with regard to the issue of what limits may be placed on the state, the <u>Lopez Torres</u> Court cited only to <u>California Democratic Party v. Jones</u>, 530 U.S. 567 (2000), which itself held that a political party has enormous leeway to chose its candidate-selection process as long as it did not apply racially discriminatory rules that would violate the Fifteenth Amendment. 128 S.Ct. at 798. As a general principal, however, the Court wrote in <u>California Democratic Party</u> that "[i]n no area is the political association's right to exclude more important than in its candidate-selection process. That process often determines the party's positions on significant public policy issues, and it is the nominee who is the party's ambassador charged with winning the general electorate over to its views." 530 U.S. at 568.

Plaintiffs here argue that they have been denied the opportunity to influence and meaningfully participate in the nominee-selection process in Kings County because they are not members of the Democratic Party, which is the dominant party in New York. As the <u>Lopez Torres</u> Court wrote: "Competitiveness may be of interest to the voters in the general election, and to the candidates who choose to run against the dominant party. But we have held that those interests are well enough protected so long as all candidates have an adequate opportunity to appear on the general-election ballot." <u>Id.</u> at 800. Indeed, Candidate Plaintiffs can participate in the political process by seeking to petition to appear directly on the general election ballot, rather than participating in the Democratic Party primary. N.Y. Election Law §§ 6-138, 6-140, & 6-142. Thus, given the rationale set forth in <u>Lopez Torres</u> concerning competitiveness in the Democratic Party nominating process, the court cannot conclude that the Subscribing-Witness

16

Rule at issue here unconstitutionally denies Plaintiffs an opportunity to participate in the electoral process.

The court further finds Plaintiffs argument that "petitioning for a primary election is not a component of party structure and internal party processes" (Letter from Aaron D. Maslow to the court dated March 31, 2008) to be unavailing. Lopez Torres and California Democratic Party broadly address the constitutional rights afforded to political parties to choose their standard bearers, and that logically and clearly encompasses the manner in which it runs its petition process. The Supreme Court employed broad brush strokes in laying out the constitutional rights of association that belong to political parties – including their ability to exclude non-members. The decision clearly applies here.

### III. Conclusion

For the reasons stated above, the court denies Plaintiffs' motion for summary judgment and grants Defendant's motion for summary judgment. The Clerk of Court is directed to close the case.


SO ORDERED.

Dated: May 23, 2008  /s Nicholas G. Garaufis
Brooklyn, N.Y.  NICHOLAS G. GARAUFIS
United States District Judge